IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| TARGA MIDSTREAM SERVICES LIMITED PARTNERSHIP, § § § Plaintiff, § § v. § § K-SEA TRANSPORTATION PARTNERS, L.P. and K-SEA OPERATING PARTNERSHIP, L.P., § § § § § Defendants. § | CIVIL ACTION NO. G-05-629 |

**ORDER DENYING DEFENDANTS' MOTION FOR LEAVE OR ALTERNATIVE MOTION TO STAY**

This case arises from an allision involving Defendants K-Sea Transportation Partners, L.P. and K-Sea Operating Partnership, L.P.'s (collectively "K-Sea") tug and barge, the M/V REBEL/DBL-152 ("REBEL"), with a submerged platform owned by Plaintiff Targa Midstream Services Limited Partnership ("Targa"). Now before the Court is K-Sea's Motion for Leave or Alternative Motion to Stay. For the reasons given below, Plaintiff's Motions are **DENIED**.[1]

**I. Background**

On November 10, 2005, the REBEL was en route from Galveston, Texas to Tampa, Florida. Approximately 29 miles south of Calcasieu Pass, Louisiana, the REBEL struck a submerged object. Subsequent investigations revealed that the object consisted of part of a platform owned by Targa that

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

1

had been previously located in West Cameron Block 229-A. The platform was destroyed during Hurricane Rita in September 2005. It is believed that during the hurricane, the platform was ripped from its mooring and broken into two or more pieces, and then settled on the bottom of the Gulf of Mexico. As a result of the allision, the REBEL sustained significant damage and ultimately capsized, discharging approximately one million gallons of oil into the Gulf of Mexico. The removal costs and damages from the spill have exceeded $25 million thus far.

    Targa originally brought suit against K-Sea for damage sustained to the sunken debris of its platform. However, K-Sea claims that the real controversy between the Parties concerns responsibility for the massive clean-up costs that resulted from the oil spill. K-Sea maintains that Targa failed to properly mark the location of the submerged debris and failed to properly ensure that notice of its location was available to mariners, and that Targa should be held ultimately responsible for the discharge of oil. Targa claims that it had notified the United States Coast Guard's ("USCG") Marine Safety Office of the damaged platform's exact location, and that the USCG published a Broadcast Notice to all mariners informing vessels of the platform's location. Targa further claims that on its way to Tampa, the REBEL headed due east on a course that took it directly through the platform field that lay east of Galveston and due south of Louisiana, rather than a safer, more circuitous route around the platform field.[2] Targa contends that the accident was primarily the fault of K-Sea, as it followed a route to Tampa that cut directly through a known platform field and that no one on board was acting as a designated lookout on the evening of the accident.

---

[2]Targa provided an article by the Mineral Management Service stating that as a result of Hurricanes Katrina and Rita, that at least 115 platforms in the area had been damaged or destroyed.

On November 21, 2005, Targa filed this lawsuit against K-Sea. On January 26, 2006, before filing an answer in this case, K-Sea filed an administrative claim with the National Pollution Funds Center for recovery of its removal costs related to the discharge, to be paid from the Oil Spill Liability Trust Fund ("OSLTF") pursuant to Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701–2720. Several months later, on March 8, 2006, K-Sea filed its Answer, and on that same day filed this Motion for Leave, or Alternative Motion to Stay. K-Sea now asks this Court for alternative relief: (1) to grant it leave to amend its counterclaim against Plaintiff to specifically omit any claim for removal costs and damages pursuant to OPA that are the subject of its OSLTF claim, and to be given further leave to amend its counterclaims at some point in the future to re-plead those claims after a final decision by on the OSLTF claim, or (2) to sever and stay such counterclaims until resolution of the OSLTF proceedings. After careful consideration of the Parties briefs and the issues presented therein, the Court finds that K-Sea's requested relief must be **DENIED**.

## II. The Oil Pollution Act of 1990

K-Sea seeks relief because it believes that the pleading requirements of Fed. R. Civ. P. 13(a) conflict with the strict liability and claims regime of OPA, and that if it is required to plead its mandatory counterclaims, that the OSLTF will be precluded from ruling on its claim until the conclusion of this lawsuit, and that allowing this lawsuit to proceed before the OSLTF claim may "effectively preclude the United States from recouping, by subrogation, millions of dollars of oil spill removal costs and damages." Therefore, a brief overview of OPA's statutory scheme is necessary before proceeding with the Court's analysis.

The Oil Pollution Act of 1990 was enacted by Congress in response to the 1989 Exxon Valdez oil spill, as well as several less-infamous oil spills that occurred in the navigable waters of the United

States around 1990. *See Gaitlin Oil Co. v. United States*, 169 F.3d 207, 209 (4th Cir. 1999); *Capital Corp. v. M/V Emily S.*, 132 F.3d 818, 820 (1st Cir. 1997); Lawrence I. Kiern, *Liability, Compensation, and Financial Responsibility Under The Oil Pollution Act of 1990: A Review of the First Decade*, 24 TUL. MAR. L. J. 481, 482 (2000). OPA created a stricter and more comprehensive liability scheme for oil spill pollution than had existed under prior legislation by imposing strict liability for the removal costs and damages arising out of oil spills to responsible parties. *See* 33 U.S.C. § 2701(32), § 2702; *Capital Corp.*, 132 F.3d at 820-21. Congress enacted OPA to provide a "prompt, federally-coordinated response to oil spills in navigable waters of the United States and to compensate innocent victims." *Gaitlin Oil Co.*, 169 F.3d at 209. OPA provides that "each responsible party for a vessel or a facility from which oil is discharged...into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages...that result from such incident." 33 U.S.C. § 2702(a). Although OPA establishes a strict liability scheme for oil spills, it also provides defenses to and limitations on liability. *See* 33 U.S.C. § 2703(a)(3), § 2704. For example, a responsible party will not be held liable for removal costs or damages under § 2702 if it can establish by a preponderance of the evidence that the discharge was caused solely by an act of God, an act of war, an act or omission of a third party, or any combination thereof. *See* 33 U.S.C. § 2703(a). If a responsible party wants to show that the discharge was caused solely by an act or omission of a third party, the responsible party must show that it exercised due care and took precautions against foreseeable acts or omissions of any such third party and the foreseeable consequences of those acts or omissions. *See id.* Additionally, 33 U.S.C. § 2704 establishes monetary limits on the liability of a particular responsible party, but this limitation of liability cannot occur if the oil spill was proximately caused by the responsible party's own gross negligence, willful

misconduct, or violation of applicable safety, construction or operating regulations. *See* 33 U.S.C. § 2704(c). If the responsible party can show that it is eligible for either a defense to liability or a limitation of liability, OPA permits it to petition the OSLTF for reimbursement of the amount that the responsible party paid over and above the limitation. *See* 33 U.S.C. § 2708. Finally, a person may bring a civil action for contribution against any other person who is liable or potentially liable under OPA. *See* 33 U.S.C. § 2709.

The provision of OPA creating the problem currently before the Court is 33 U.S.C. § 2713(b)(2), which provides that "no claim of a person against the Fund may be approved or certified during the pendency of an action by the person in court to recover costs which are the subject of the claim." K-Sea argues that because its claim before the OSLTF cannot proceed simultaneously with this litigation, that the Court should either permit it to omit its counterclaims with leave to refile at some future date after resolution by the OSLTF, or the Court should sever and stay all of its counterclaims seeking recovery from Targa until its claim has been heard and adjudicated by the OSLTF.

**III. Motion for Leave to Amend**

K-Sea first seeks leave to amend because of the mandatory pleading requirements of Fed. R. Civ. P. 13(a), which provides that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." K-Sea's claims for damages and removal costs against Targa fall within the parameters of Rule 13(a).

K-Sea attempts to fit this case within the parameters of either one of two exceptions to the

mandatory pleading requirements.  First, Fed. R. Civ. P. 13(f) provides that "when justice requires, the pleader may by leave of court set up the counterclaim by amendment."  K-Sea would ask that the Court grant leave to omit its current counterclaims that concern the claim before the OSLTF, with leave to re-file any such counterclaims as necessary within 30 days of resolution of the OSLTF process.  Second, K-Sea asks this Court to deem these counterclaims as not yet matured pursuant to Rule 13(e), and to allow K-Sea to dismiss such claims with leave to present them later by supplemental pleading upon completion of the OSLTF process.  Fed. R. Civ. P. 13(e) provides that "[a] claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading."

The Court is not satisfied that the issue at present falls within the scope of either Rule 13(e) or Rule 13(f).  As to Rule 13(e), K-Sea's claim against Targa has matured, even if the total damages are still accruing.  Rule 13(e) does not apply.  As to Rule 13(f), K-Sea has failed to show that Rule 13(f) applies to the present circumstance.  There is no omitted counterclaim at present.  All of the mandatory counterclaims have been plead.  K-Sea wants leave to amend its pleading to omit the controversial counterclaims, with leave to refile them at some later as-yet-undetermined date.  Resolution of the OSLTF proceeding will most likely occur well after a final judgment has been issued in this litigation, and the refiling of any such counterclaims after that time would in effect re-open a closed case.  Such relief would not facilitate the settling of all related claims in one action.  More importantly, K-Sea has not shown that the interests of justice would be served by such relief.  All it has shown is that it would then be allowed to proceed with its matters in its preferred order.  K-Sea's Motion for Leave to Amend is respectfully **DENIED**.

**IV. Motion to Stay**

    *A. Discretionary Stay*

A district court possesses "general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *McKnight v. Blanchard*, 667 F.3d 477, 479 (5th Cir. 1982). This discretion is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936). The Court must weigh the "competing interests and maintain an even balance" in making such determinations. *See id.* at 255, 57 S. Ct. at 166. Although a court is given wide discretion in such matters, use of this power must not be abused and stays of indefinite duration will be reversed. *See id.*; *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985); *McKnight*, 667 F.2d at 479. Before granting a stay pending resolution of another proceeding, the Court must consider the likely length of time it will take for the other proceeding to resolve. *See Wedgeworth v. Firebrand Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). The moving party bears a heavy burden to show why a stay should be granted. *Coastal*, 761 F.2d at 203 n.6. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255, 57 S. Ct. at 166.

    *B. Analysis*

K-Sea has failed to meet its heavy burden in showing why a stay should be granted in this case. *See Coastal*, 761 F.2d at 203. Essentially, K-Sea has not shown that OPA, and more specifically 33 U.S.C. § 2713(b)(2) entitles it to have its claim considered by the OSLTF before the resolution of this lawsuit.

There is nothing in OPA's statutory scheme that prohibits related litigation from taking place before or after the OSLTF has ruled on a claim. The only prohibition is that the OSLTF cannot approve or certify a claim during the pendency of an action in court to recover costs which are the subject of the claim. *See* 33 U.S.C. § 2713(b)(2). There is no statutory mandate that all related litigation be stayed pending resolution of the claim before the OSLTF, nor is there any indication that under OPA a party is prejudiced because its OSLTF claim is determined after related litigation in a district court. K-Sea has provided no persuasive alternative interpretation of the relevant statutes. K-Sea states repeatedly that the subrogation rights of the United States could be prejudiced, but provides no support for this argument. The statute appears to be primarily concerned that a claimant cannot recover against the OSLTF and then go out and recover again against a private party, thereby obtaining a double recovery. Certainly the Court is wary of prejudicing the subrogation rights of the United States, but a conclusory assertion of potential prejudice without any concrete showing of prejudice or a persuasive argument in support leaves the Court with no basis upon which to make a decision, and it is not enough to justify a stay under the circumstances.

Additionally, the Court is concerned that the amount of time it will take for the claim to be resolved amounts to a stay of indefinite duration. Other cases involving similar claims have taken anywhere from three to five years to reach a final resolution in district court, not even taking into consideration any appeal of a district court's review of the agency decision to the circuit courts. *See Smith Property Holdings 4411 Connecticut L.L.C. v. United States*, 311 F. Supp. 2d 69, 73-76 (D.D.C. 2004) (five years); *Apex Oil Co., Inc. v. United States*, 208 F. Supp. 2d 642, 645-48 (E.D. La. 2002); (three-and-a-half years); *International Marine Carriers v. Oil Spill Liability Trust Fund*, 914 F. Supp. 149, 150–51 (S.D. Tex. 1995) (three-and-a-half years). The Scheduling Order in this

case was entered on April 12, 2006, and this case has a firm trial setting of March 12, 2007. This matter will most likely be resolved in less than a year. The same cannot be said for the claim before the OSLTF. The prospect of severing and staying K-Sea's counterclaims indefinitely only to have them rise from the dead several years after this litigation has already concluded is an untenable situation, and it would undoubtedly cause disruption to the efficient administration of this Court's substantial docket obligations.[3] K-Sea has not shown that its claims before the OSLTF will be prejudiced by the mere one year delay likely to result from this litigation, nor has it shown that a stay in this case would benefit the litigation as a whole as well as all Parties involved. The Court finds that this is not one of the "rare circumstances" whereby one party must be asked to stand aside while another proceeding moves forward. *See Landis*, 299 U.S. at 155, 57 S. Ct. 166. K-Sea's Motion to Stay is respectfully **DENIED**.

## IV. Conclusion

For the reasons stated above, K-Sea's Motion for Leave, or Alternative Motion to Stay is respectfully **DENIED**. K-Sea has failed to show that justice requires a grant of indefinite leave to file counterclaims at some future date, nor has it met its heavy burden to show that a stay is justified under the circumstances of this case. Each Party to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.

---

[3] The only case K-Sea provides in support of its argument is *In re Frescati Shipping Co., Ltd.*, 2006 WL 42982 (E.D. Pa. Jan. 5, 2006). In that case, the district court decided to sever and stay the related claims because it felt that "no purpose would be served by litigating claims that may be resolved as a result of the OSLTF proceedings." *Id.* at *1. It provided no analysis or additional justification for its decision, and therefore is of no persuasive authority to this Court.

**IT IS SO ORDERED.**

**DONE** this 20th day of April, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge