IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TARGA MIDSTREAM SERVICES LIMITED PARTNERSHIP, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. G-05-cv-629 |
| K-SEA TRANSPORTATION PARTNERS, L.P., et al., | § § § | RULE 9(h) ADMIRALTY |
| Defendants. | § § | |

**ORDER DENYING PLAINTIFF'S MOTION FOR BIFURCATED TRIAL**

This case arises out of an allision between the Pelican Offshore Pipeline Platform ("Pelican Platform"), which is owned by Targa Midstream Services Limited Partnership ("Targa"), and the M.T. REBEL, which is owned by K-Sea Transportation Partners, L.P. ("K-Sea"). The M.T. REBEL had the barge DBL 152, also owned by K-Sea, in tow, and the barge was carrying 120,170.81 barrels of fuel oil owned by Rio Energy International Inc. ("Rio"). Targa filed a Motion for a Bifurcated Trial, and the Intervenors Interested Underwriters as Subrogees of Rio Energy International Inc. filed a Response in Opposition to Targa's Motion. For the reasons outlined below, Targa's Motion is **DENIED**.[1]

**I. Background**

On or about November 11, 2005, K-Sea's DBL 152 was being towed by the M.T. REBEL and was transporting approximately 120,000 barrels of fuel oil owned by Rio from Houston, Texas to

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

1

Tampa, Florida. The Pelican Platform was partially submerged due to damages it sustained during Hurricane Rita. K-Sea's vessels allided with submerged pieces of Targa's Pelican Platform, causing at least some of the fuel oil aboard the DBL 152 to be discharged into the Gulf of Mexico. Targa filed the instant lawsuit, claiming that K-Sea was at fault because the Pelican Platform is a fixed object and, according to Targa, K-Sea should have known about it. The Interested Underwriters as Subrogees of Rio Energy International Inc. ("Rio Underwriters") intervened, seeking to recover at least $5,711,726.38 for the fuel oil that was lost. K-Sea filed a counterclaim against Targa, in which it asserts that the allision was the result of Targa's negligence in that Targa allegedly did not notify government authorities about the true nature and extent of the damage to the Pelican Platform, did not use reasonable care to ensure all mariners were warned of the hazard, and did not properly mark the submerged portions of the Pelican Platform. K-Sea claims that the damages it sustained total over $90,000,000.00 and include the loss of its barge, lost income, and removal and cleanup costs associated with the discharge of the fuel oil.

This case is currently set for a three-day trial on July 23, 2007. Targa requests that the case go forward on that date for a determination of liability, but that a damages trial be set for six to nine months later. Rio Underwriters is opposed to a bifurcated trial, which it claims would prejudice its interests in this case.

**II. Legal Standard**

Rule 42(b) of the Federal Rules of Civil Procedure allows a court to "order a separate trial of any . . . separate issue" "in furtherance of convenience or to avoid prejudice, or when separate trials may be conducive to expedition and economy," so long as the right to a trial by jury is not violated. Fed. R. Civ. P. 42(b). Normally, a separate trial of issues is not necessary, and a "partial new trial . . .

may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without prejudice." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S. Ct. 513, 515, 75 L. Ed. 1188 (1931); *see also Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) (quoting the same language); *Swofford v. B&W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964) (citing *Gasoline Prods. Co.* for the same proposition and noting that "the normal law suit seldom requires a separate trial of the issues"). The decision to bifurcate a trial "is a matter within the sole discretion of the trial court," and the Fifth Circuit "will not reverse the court's decision absent an abuse of that discretion." *First Tex. Sav. Ass'n v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992).

### III. Analysis

Targa claims that, in the instant case, (1) the determination of liability and damages involves separate and distinct issues and evidence; (2) the damages issue is complex and "will likely lead to confusion that will unduly prejudice Targa;" and (3) judicial economy will be served by bifurcating because the time-consuming review of thousands of damage documents will be unnecessary if K-Sea is found wholly at fault or if the parties settle after the liability phase. Targa's Mot. to Bifurcate at 4.

Rio Underwriters strenuously objects to Targa's contention that the evidence required to prove liability will not overlap with the evidence required to prove damages. Rio Underwriters claims that testimony and documentary items relating to Rio and K-Sea's contractual relationship, the nature of the cargo, and the normal handling of Rio's fuel is necessary in order for it to show both liability and damages and that limiting its ability to present evidence as to its lost fuel oil until after a liability trial would be prejudicial. The Court is not convinced that the evidence that Rio Underwriters points to will be necessary to prove both liability and damges, but the Court finds that testimony regarding the

damage sustained by the Pelican Platform during Hurricane Rita will be relevant in both phases. In the liability phase, the Parties will inevitably be required to present evidence regarding the hurricane damage because Rio Underwriters claims that Targa did not properly inform government authorities about the true nature and extent of the damage to the Pelican Platform. In the damages phase, if K-Sea is found liable, Targa will need to present evidence relating to the repairs that were needed in order to restore the Pelican Platform to the condition it was in just before the allision—which requires evidence about the hurricane damage. Thus, the Court finds that the evidence required in each phase is not completely separate and distinct.

Targa's next contention is that the damage issues are complex and confusing and will unfairly prejudice Targa. Rio Underwriters asserts that the damage issues are not as confusing as Targa claims, explaining that, at least with regards to its damages, all that is required is to multiply the contract price per barrel by the number of barrels lost. Rio Underwriters also complains that it is unfair to require it to wait up to nine months in order to recover its damages just because the calculation of K-Sea's damages may be more complex. The Court agrees that any issues regarding Rio Underwriters' damages should be straightforward, but also acknowledges the potential complexity of determining K-Sea's damages. Regardless, a *bench trial* is scheduled for July 23, 2007, in front of a seasoned admiralty judge, so any qualms Targa may have regarding the complexity of the damage issues or the danger of confusing the trier of fact are unfounded.

Targa's final contention in its request for bifurcation is that bifurcation will promote judicial economy because the "library of damages documents that K-Sea has produced continues to grow," and that "the trier of fact will likely be required to review a large number of documents concerning the alleged damages suffered." Targa's Mot. at 7. In addition, according to Targa, evidence during

4

the damages phase may include testimony from over thirty third-party vendors retained by K-Sea to remove the discharged fuel oil from the Gulf of Mexico. The Court acknowledges that the damages in this case may be complex, but finds that having thirty different vendors testify about damages is unjustified. A single expert can itemize the "library of documents" outlining K-Sea's damages and present a summary to the Court.

Targa also argues that judicial economy will be served if the trial is bifurcated because it will be unnecessary to present evidence regarding damages if the Parties settle after the first phase or if K-Sea is found wholly liable. If, on the other hand, the trial is not bifurcated, the Court's time may be wasted listening to testimony and reviewing documents relating to damages. The Court notes that bifurcating the trial *may* save time in the long run, but finds that the mere possibility that time will be saved does not outweigh the inefficiency of holding two separate trials if Targa is found liable and the Parties do not settle after the liability phase.

## IV. Conclusion

For the reasons stated above, Targa's Motion to Bifurcate is **DENIED**. Each Party is to bear its own taxable costs, expenses, and attorneys' fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 26th day of April, 2007, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge

5