IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TARGA MIDSTREAM SERVICES LIMITED PARTNERSHIP, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | CIVIL ACTION NO. G-05-0629 (Consolidated with G-06-0017) |
| K-SEA TRANSPORTATION PARTNERS, L.P., | § § § | |
| Defendant. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The court makes the following findings of fact and conclusions of law according to Fed. R. Civ. P. 52.

**FINDINGS OF FACT**

1. The court **ADOPTS** the Admissions of Fact contained in the Joint Pretrial Order (Docket Entry No. 103, pp. 6-9) and the stipulations of the parties as to damages and prejudgment interest.

2. Second Mate Mary O'Brien Golden knew for some time before November 10, 2005 (probably since September 30, 2005), that the platform known as "West Cameron 229A" was missing.

3. Although the night orders of Captain McCracken, the Master of the *M/V Rebel*, stated "mark any damage [sic] platforms

along rt. or track on chart and chart plotter . . . (Exhibit 7),″ Golden did not inform any other officer of the *Rebel*, either orally or in writing, that platform 229A was not visible.  During the previous voyages after Hurricane Rita, Golden was on duty when the *Rebel* passed platform 229A.  No other officer of the *Rebel* was on duty as it passed platform 229A after Hurricane Rita had damaged the platform.

    4.  NOAA Chart 11340, which covered the area where the allision occurred, contained a Caution (Exhibit 13), which stated

> "Hurricanes and tropical storms disturb objects on the sea floor and cause considerable damage to offshore structures, aids to navigation and moored vessels resulting in extensive debris being submerged in unknown locations. . . .  Aids to navigation may not be reliable immediately following such storms.  Mariners are urged to exercise extreme caution and are requested to report aids to navigation discrepancies and hazards to navigation to the nearest United States Coast Guard unit."

Although Golden was aware of the Caution, she did not report to the Coast Guard that platform 229A was no longer observable.

    5.  On the evening of November 10, 2005, beginning at 23:45 Golden was on the bridge of the *Rebel* and was serving as the vessel's only lookout.  Although she had known for some time that platform 229A was missing, she intentionally steered the *Rebel* on a course over the charted location of the platform.  Golden assumed that platform 229A had been decommissioned and removed.  No one told her that the platform had been decommissioned or removed, and she never contacted the Coast Guard to determine why the platform

was no longer observable.  Given the fact that two hurricanes had passed through the area during the previous two and one-half months and the language of the Caution, it was unreasonable for Golden to assume that platform 229A had been decommissioned.  The more logical explanation for the missing platform was that it had been damaged by Hurricane Katrina or Rita.

6.  Had the damaged platform been marked with a light Golden would have steered the *Rebel* to avoid an allision with the platform.

7.  Captain McCracken acted reasonably in choosing the ten-fathom curve route instead of the fairway route for the voyage in question.  By sailing on a route other than the safety fairway, however, the officers of the *Rebel* had to exercise greater care to avoid allision with platforms and other obstructions to navigation.

8.  Other than the negligence of Golden described above, K-Sea[1] was not negligent with respect to the allision, and no other act of K-Sea proximately caused or contributed to the allision or any party's damages.

9.  Neither the *Rebel* nor the barge DBL-152 was unseaworthy, and the condition of the *Rebel* and barge 152 did not contribute to the allision in question or to the capsizing of barge 152.

---

[1] K-Sea refers to defendants K-Sea Operating Partnership L.P., K-Sea Transportation Partners, L.P., *M/T Rebel*, Unnamed Master of *M/T Rebel*, and Unnamed Wheelman of *M/T Rebel*.

10. Platform 229A, in its damaged condition, was an obstruction and a hazard to navigation.

11. Targa[2] knew that 33 C.F.R. Part 64 governed the marking of damaged platform 229A.

12. After Targa became aware that platform 229A had been damaged, and was no longer observable on the surface, it arranged to put temporary, unlit, "Norwegian" buoys over the platform and arranged to purchase a large, lighted, radar-reflective "smart" buoy.

13. Targa notified the Coast Guard that the submerged platform had been marked with unlit buoys, that it would take approximately two weeks for the smart buoy to be constructed, and that it would take approximately six weeks to locate a vessel capable of setting the smart buoy over the damaged platform.

14. The Coast Guard did not approve the failure of Targa to mark platform 229A with a lighted buoy before November 10, 2005.

15. Targa made no effort to confirm that the Coast Guard ever broadcasted a notice to mariners relating to platform 229A before November 20, 2005.

16. Targa's efforts to secure a vessel to place the large, smart buoy were reasonable under the circumstances.

---

[2]Targa refers to plaintiff, Targa Midstream Services Limited Partnership, and its predecessor.

17.  Before November 10, 2005, smaller lighted buoys were available and vessels were available to affix such lighted buoys to the seabed adjacent to damaged platform 229A or to the platform itself. Although such buoys may not have been suitable on a permanent basis to mark the location of the platform, they were suitable, at least until the smart buoy could be placed, to mark the location of the platform.

18.  Targa made no effort to determine the availability of other lighted buoys or to arrange to place one or more lighted buoys over platform 229A until it could place the smart buoy over the platform.

19.  Given the substantial hazard to navigation that the sunken, unmarked platform 229A represented, it was unreasonable to wait until a vessel was available to place the smart buoy over the damaged platform before marking it with a light.

20.  Other than the negligence of Targa in not marking the sunken platform 229A with a lighted buoy before November 10, 2005, Targa was not negligent with respect to the allision, and no other act of Targa proximately caused or contributed to the allision or any party's damages.

## CONCLUSIONS OF LAW

1.  Second Mate Golden was negligent in navigating the *Rebel* on November 10 and 11, 2005. A reasonable navigator would not have

steered the *Rebel* over the location of a known, charted platform. A reasonable officer of the *Rebel* would have noted the missing platform on the chart before November 10, 2005; and would have notified other officers of the *Rebel* and the Coast Guard that the platform was missing; and would have attempted to determine why the platform was no longer visible.

2. The negligence of Second Mate Golden was a proximate cause of the allision and a "substantial factor" in causing the damages suffered by K-Sea and Targa.

3. As explained more fully in the court's Memorandum Opinion and Order entered on October 19, 2007 (Docket Entry No. 110), 33 C.F.R. part 64 ("part 64") established Targa's duty to mark its damaged platform. Part 64 required Targa to act reasonably under the existing circumstances.

4. Part 64, Section 11(a) states:

"The owner of a vessel, raft, or other craft wrecked and sunk in a navigable channel shall mark it immediately with a buoy or day mark during the day and a light at night. The owner of a sunken vessel, raft, or other obstruction that otherwise constitutes a hazard to navigation shall mark it in accordance with this subchapter."

5. The failure of Targa to mark platform 229A with a light before November 10, 2005, was negligence.

6. The negligence of Targa in failing to mark platform 229A with a light was a proximate cause of the allision and a

substantial factor in causing the damages suffered by K-Sea and Targa.

7. The negligence of Targa is not excused as an act of God or for any other reason advanced by Targa.

8. Liability between K-Sea and Targa must be allocated proportionately to the comparative degrees of the parties' fault.

9. Targa had a duty to mark the damaged platform with a lighted buoy as soon as reasonably possible under the circumstances. Although Targa promptly notified the Coast Guard, located a lighted smart buoy, and attempted to locate a suitable vessel to place the smart buoy over the platform, there was no persuasive reason why, even under the exigent circumstances following two hurricanes, Targa could not have placed temporary, lighted buoys over the platform while waiting for a vessel to place the smart buoy.

Notwithstanding the negligence of Targa, the court is persuaded that K-Sea bears a greater degree of liability for several reasons. First, Second Mate Golden was operating under no exigencies when she chose not to report the absence of platform 229A or to investigate the cause for its absence. Under these circumstances, even had there been a reasonable basis for believing that the platform had been decommissioned and abandoned (which there was not), a reasonably prudent mariner would have steered the

*Rebel* around the charted location of the platform instead of over it.

After carefully considering the evidence, the court concludes that K-Sea's negligence proximately caused 60% of the damages suffered by K-Sea and Targa, and that Targa's negligence proximately caused 40% of the damages suffered by K-Sea and Targa.

10. Any Finding of Fact that is more properly characterized as a Conclusion of Law is **ADOPTED** as such. Any Conclusion of Law that is more properly characterized as a Finding of Fact is **ADOPTED** as such.

Counsel shall submit to the court by December 14, 2007, a form of Final Judgment.

**SIGNED** at Houston, Texas, on this 10th day of December, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE